FILED

2007 Jul-13  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| LISA D. SCHLARB, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
| v. | ] |
| | ]        **CV-07-BE-0315-S** |
| ALATRADE FOODS, LLC, et al., | ] |
| | ] |
|     Defendants. | ] |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss (Doc. 12) and Defendants'

Motion for Rule 11 Sanctions (Doc. 16).  Because Plaintiff has failed to allege cognizable injuries

under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et*

*seq.*, and has failed to sufficiently plead that Defendants' alleged RICO predicate acts were the

proximate cause of her injuries, Defendants' Motion to Dismiss is GRANTED.  Defendants'

Motion for Rule 11 Sanctions is DENIED.

## I.  BACKGROUND

The facts, as alleged in Plaintiff Lisa Schlarb's First Amended Complaint (Doc. 10), are as

follows:

Defendant Alatrade has been engaged in the poultry processing business since at least

2001.  Since 2001, Alatrade's workforce has increased from 250 to more than 1700, and Alatrade

has opened two additional facilities (for a total of three).  The bulk of Alatrade's workforce

consists of hourly unskilled wage earners.  Alatrade relies heavily on temporary employment

services to meet its workforce requirements.

In early 2002, Defendant Davis Lee, CEO of Alatrade, funded the formation of Job Source, a personnel staffing company.  Plaintiff Lisa Schlarb and two co-workers (Catherine Black and Velma Lopez), quit their jobs at Job Connections, another personnel staffing company, to assist in the start-up and operation of Job Source.  Lee allegedly promised ownership interests of seventeen percent each to the three women.  Defendant Patti Yancy, CFO of Alatrade, was to provide accounting services to Job Source.  In May 2002, another staffing company terminated its contract with Alatrade, and Job Source began providing services to Alatrade.

Upon beginning service to Alatrade, Job Source had to re-process Alatrade's existing workforce as new employees.  Job Source determined that a large portion of the existing employees were illegal aliens.  "The demands for personnel by Alatrade were such that sufficient numbers of legal workers could not be found and immigrant workers with dubious or suspicious documentation were hired and provided to Alatrade."  (First Am. Compl. ¶ 22.)  Schlarb subsequently began to have disagreements with Lee about this practice.

Concurrently, Schlarb, Black, and Lopez still had not received ownership documents from Defendant Danny Yancy, an organizer of Job Source.  Yancy later produced documents listing the women as employees rather than owners, and maintained that each was only ever promised a ten percent interest.  On February 23, 2003, Yancy and Lee terminated Schlarb.  Subsequently, Yancy issued ten percent ownership interests to Black and Lopez.

Schlarb claims that Alatrade's employment of illegal aliens enables Alatrade to pay less, maintain less workers' compensation insurance, and otherwise lower costs, all of which result in higher profits for Alatrade.  Job Source's acquiescence in providing illegal workers gives the company a correlative increase in profits.

Schlarb's complaint includes one cause of action for RICO violations based upon the facts above.  Schlarb alleges several injuries, but only two are injuries to her personally; the remaining injuries apply to "all personnel staffing companies in the Marshall County area."[1]  The two alleged injuries personal to Schlarb include: (1) "depriv[ation] of business relations unhampered by schemes prohibited by the RICO predicate statutes" (First Am. Compl. ¶ 36); and (2) termination from Job Source and, therefore, denial of her ownership interest and share of the profits (First Am. Compl. ¶ 38).

Defendants move to dismiss on several grounds: (1) Schlarb was not injured; (2) no direct relationship exists between the claimed injury and alleged RICO violations; (3) termination is not a cognizable injury under RICO; and (4) the statute of limitations has expired.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 1969.  In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in

---

[1] The "irreducible minimum" of Article III's limit on judicial power is a requirement that a party "show he personally has suffered some actual or threatened injury." *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982). Consequently, the court does not address those claims not personal to Schlarb.

-3-

the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

## III.  DISCUSSION

To establish a federal RICO violation, a plaintiff "must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (citations omitted).  In a civil RICO case, the plaintiff must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id.* at 1283 (quoting 18 U.S.C. § 1964(c)).  "The terms 'business or property' are, of course, words of limitation which preclude [certain forms of] recovery." *Id.* at 1286 (quoting *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992)) (quotation marks omitted) (addition in original).  The "by reason of" language is likewise limiting; it requires: "(1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Id.* at 1287 (citing *Trollinger v. Tyson Foods*, 370 F.3d 602, 612 (6th Cir. 2004)).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1998 (2006).

Assuming *arguendo* that Schlarb has sufficiently pleaded the four elements of a *prima facie* RICO violation, she has not sufficiently alleged a cognizable injury or proximate causation.  Schlarb's first alleged injury – "being deprived of business relations unhampered by schemes prohibited by the RICO predicate statutes" (First Am. Compl. ¶ 36) – simply parrots language approved by the Eleventh Circuit in *Mohawk* without adding any substance. *See Mohawk*, 465 F.3d at 1286 (discussing *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002)).  Both

*Mohawk* and *Mendoza* are significantly different from Schlarb's situation.  In both cases, the courts of appeals held that *legal workers* could allege sufficiently direct injury to confer standing based on the defendants' employment of illegal workers at depressed wages.  *Id.* at 1292; *Mendoza*, 301 F.3d at 1170.  Legal workers, therefore, are "direct victims" of the illegal hiring practices.  *Mohawk*, 465 F.3d at 1292 (quoting *Mendoza*, 301 F.3d at 1170).

Here, on the other hand, Schlarb is not a direct victim of Alatrade's alleged illegal hiring scheme.  Unlike the plaintiffs in *Mohawk* and *Mendoza*, Schlarb does not allege an injury based on diminution in wages she received directly from the defendant employer.  *See Mohawk*, 465 F.3d at 1290.  Schlarb instead seems to allege some competitive injury, (First Am. Compl. ¶¶ 36, 37), which presents a situation similar to one in which the U.S. Supreme Court has denied standing based on the lack of direct injury.

In *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. at 1994, Ideal sued a competitor based on "a practice of failing to charge the requisite New York sales tax to cash-paying customers."  The competitor's reduction of its prices without affecting its profit margin allowed it to open a new facility and caused Ideal "to lose 'significant business and market share.'" *Anza*, 126 S. Ct. at 1994-95.  The Court held that the direct victim of the alleged RICO scheme (*i.e.*, mail and wire fraud in submitting false tax forms) was the State of New York, not the defendant's competitors. *Id.* at 1996-97.  Therefore, the Court held that the defendant's alleged defrauding of the state was not the proximate cause of the competitor's lost sales.  *Id.* at 1997.  Similarly, in this case, the only possible direct victims are legal workers, not Schlarb, or other competing personnel staffing companies.

The Court supported its holding in *Anza* that the competitor lacked standing to bring a RICO action by examining the underlying principles of the directness requirement.  First, the

requirement seeks to avoid difficult ascertainment of damages caused by some remote action. *Anza*, 126 S. Ct. at 1997. The court recognized that the competitor in *Anza* could have lowered its prices for reasons unconnected to the RICO scheme, and "[i]ts lowering of prices in no sense required it to defraud the state tax authority." *Id.* Competitive injuries fall within this difficulty for a second reason: "Businesses lose and gain customers for many reasons . . . ." *Id.* Thus, establishing the portion of lost sales due to the competitor's decreased prices would require a complex undertaking. "[T]hese concerns help to illustrate why Ideal's alleged injury was not the direct result of a RICO violation. Further illustrating this point is the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim." *Id.* at 1998.

Finally, according to the Court, "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza*, 126 S. Ct. at 1998. As discussed above, the immediate victims here are legal workers denied jobs or higher wages due to Alatrade's alleged illegal employment practices – not the Plaintiff.

Schlarb's second alleged personal injury – her termination and corresponding deprivation of "her share of the profits" – likewise fails to satisfy the direct injury and proximate cause requirements. An obvious problem arises because Schlarb essentially seeks a portion of the profits she claims resulted from an illegal hiring scheme in violation of RICO. *See, e.g., Zareas v. Bared-San Martin*, 209 Fed. App'x. 1, 1 (1st Cir. 2006) (stating that "asking the court to recognize and enforce an interest in property that was ill-gotten or paid for by ill-gotten monies . . . [is] not cognizable").

Notwithstanding, Schlarb has failed to allege the proper causal nexus between her injury and the alleged predicate acts of hiring illegal aliens. The Complaint does not clearly state the

alleged cause of Schlarb's termination, but the factual recitation implies only two possible causes: (1) Schlarb's insistence that she was entitled to seventeen percent interest; and/or (2) Schlarb's raising of concerns about hiring illegal aliens.  Plaintiff alleges no facts that support a relationship between the alleged RICO predicate acts and her dispute with Lee and Yancy regarding the amount of her ownership interest in Job Source.  The second possible cause, on the other hand, is in some way related to the alleged predicate acts by its very nature.  Nonetheless, Plaintiff's termination because of her concerns regarding the alleged illegal hiring scheme is insufficient for RICO standing under Eleventh Circuit case law.

In *O'Malley v. O'Neil*, 887 F.2d 1557 (11th Cir. 1989), the Eleventh Circuit encountered an analogous situation.  The plaintiffs claimed that they were terminated for their refusal to participate in an alleged mail fraud RICO scheme.  *See O'Malley*, 887 F.2d at 1554.  The district court held that the plaintiffs lacked standing because their loss of employment was not caused by the predicate acts.  *See id.*  The Eleventh Circuit agreed.  "RICO does not provide a remedy for every injury that may be traced to a predicate act;" in addition to "but for" causation, plaintiffs must show that the predicate acts themselves *directly* caused them to lose their jobs.  *Id.* at 1561. Likewise, "Schlarb's interest in Job Source has been severed from her control . . . [and] [s]he has been denied her share of the profits" (First Am. Compl. ¶ 38) by reason of Yancy's and Lee's decision to fire her, not because of the alleged commission of the predicate acts.  *See O'Malley*, 887 F.2d at 1563.  This "tangentially related decision to fire" Schlarb does not suffice for RICO standing.  *See id.*

Having found that Plaintiff's First Amended Complaint does not allege cognizable injuries under the RICO statute and that Plaintiff cannot establish that the alleged RICO predicate acts

proximately caused her alleged injuries, the court GRANTS Defendants' Motion to Dismiss.  The court does not need to reach the other grounds raised in support of the Motion.

## IV.  RULE 11 SANCTIONS

Defendants move the court to impose Rule 11 sanctions against Schlarb and her attorney because "an abundance of authority . . . would have led a reasonable attorney to believe and understand that RICO was not a proper remedy under the circumstances."  (Defs.' Mot. for Sanctions ¶ 7.)  In addition, they argue, the Plaintiff has failed to succeed in state court several times, and the complaint in this court was filed only to harass the Defendants.

The court has discretion to impose Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)).  Defendants allege that all three grounds are present.

Taking Plaintiff's factual allegations as true, as the court must at this stage of the proceedings, one could reasonably conclude that Schlarb was wronged in some way.  Defendants' review of Schlarb's state court complaints based on many of the same facts indicates that Schlarb has failed to obtain redress based on other legal theories.  (*See* Def.'s Br. 2, Exs. 1-4.)  Although the Plaintiff's First Amended Complaint in this court fails to state a viable RICO claim, the court cannot conclude that only an unreasonable lawyer would advance the claim.  *See Anderson*, 353 F.3d at 916.  As discussed *supra*, the courts have condemned illegal alien hiring schemes like the one alleged here.  However, Schlarb is not the proper plaintiff to bring such an action.

Defendants argue that the timing of Plaintiff's complaint – "mere days following the state courts [*sic*] order granting summary judgment" – "is *prima facie* proof of the malicious and improper purposes of a pleading filed in bad faith."  (Def.'s Mot. for Sanctions ¶ 8.)  Although these circumstances imply that Schlarb may have filed her RICO action as a last-ditch effort, Defendants have not demonstrated bad faith to justify sanctions.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1121 ("A finding of bad faith is warranted where an attorney or a client knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.").  Therefore, Defendants' Motion for Rule 11 Sanctions is DENIED.[2]

## V.  CONCLUSION

Plaintiff has failed to allege "any set of facts" that could support a cognizable RICO injury or satisfy the requirement of proximate causation.  Accordingly, Defendants' Motion to Dismiss is hereby GRANTED.  Because Defendants have failed to demonstrate that Plaintiff filed her complaint in bad faith, and because the court is unable to conclude that only an unreasonable lawyer would pursue the claim, Defendants' Motion for Rule 11 Sanctions is hereby DENIED. The court will enter a separate final order consistent with this Memorandum Opinion.

DONE and ORDERED this 13th day of July, 2007.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[2] Although the court, in its discretion, declines to impose sanctions under the circumstances, the continued filing of unmeritorious complaints would border on harassment. The court cautions Plaintiff and her counsel to consider Rule 11 obligations before filing another complaint based on these events.

-9-